THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN C. RETTIG, Defendant-Appellant.

(No. 69-121; ▮▮▮▮▮▮▮▮▮

Third District—December 11, 1970.

*Rehearing denied December 24, 1970.*

Jonh Donald O'Shea, of East Moline, for appellant.

James C. Shearer, Assistant State's Attorney, of Rock Island, for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Steven Rettig, James James and Harry Hufford were indicted for the offenses of murder, felony murder and robbery. Defendant Rettig was tried separately and found guilty of each of the offenses by a jury and was sentenced by the Circuit Court of Rock Island County to a term of from 14 to 30 years in the penitentiary. Prior to the trial of Rettig the other two co-defendants James and Hufford, had entered guilty pleas to the offenses and were at the time of Rettig's trial serving sentences for such offenses in the penitentiary. This is an appeal by Rettig only.

During the early morning hours of April 17, 1969, two patrolmen of the city of Rock Island while patroling 20th Street in Rock Island noticed a grey haired man walking down 20th Street. He had trouble walking, and three younger men came up to him and put their arms around him. The officers, Rosenthal and Kerch, suspected a rolling and decided to keep the quartet under observation. The "elderly gent" and his three younger companions got into a car, and the officers followed them to the Dividend Bonded Service Station at 7th Street and 24th Avenue in Rock Island. The officers parked in the alley and observed the older man and two of the younger men go into the station. As they came out, one of them appeared to toss cigarettes to another in the group. During the time that they were at the station a black chevrolet pulled into the station, and one of the four went over and talked to its occupants. Then two of the quartet went to the tailgate of the station wagon in which they had been riding, opened the tailgate, and appeared to remove something from the tailgate area. The quartet then got back into the Chevy station wagon and left. The police,

not wishing to be seen, lagged behind, and lost sight of the Chevy station wagon.

At the time the quartet had driven to the station, Garrell Rottman was the attendant on duty. When the three entered the station, the older man had purchased cigarettes. The older man, however, had no money. He wanted to charge the cigarettes. Apparently because the whole situation struck the attendant funny, he allowed the older man to charge the cigarettes even though he had not known him previously, and even though he had no charge card.

Between 1:30 and 2:30 A.M. on April 17, 1969, Michael Spaulding drove into the Dividend Bonded Service Station. While there he saw the 1959 Chevy station wagon, Harry Hufford, James James and a "Steve Ritter" or "something like that.". He also saw a man in a green suit sitting in the car.

A co-defendant James Allan James called as a People's witness, described what had occured on April 17, 1969. He had previously pled guilty to the same charges.

James, age 17, testified he met Harry Hufford, age 26, and the Defendant Rettig on 20th Street in Rock Island. While on 20th Street they saw Mr. Tucker, whose name they didn't know. He testified Hufford then said "Let's roll the man" in a joking manner. He said "O.K.", and Rettig said "He didn't care.". James testified Tucker then approached them, and asked Hufford where a party was going on, and Hufford told him there was a party at James' house. They got into Rettig's car and drove to the Bonded Service Station where they stopped to get cigarettes. Tucker had no money, and was going to put up a credit card. James indicated Rettig had helped Hufford get into the tailgate of the Chevy wagon. After getting back in the car, they went to a fairly deserted road in the county where he started to go through the pockets of the sleeping Tucker. As he tried to remove a ring, the man he referred to as Tucker moaned. Hufford thereupon struck Tucker in the face with his fist, and he and Hufford then removed Tucker from the car. Once the victim was out of the car, Hufford struck him about four times in the head with a tire iron, and thereafter he struck him twice with the same tire iron. Rettig never got out of the car. James testified he removed a ring from the man he called Tucker and he gave that ring to a Jayne Thompson for safe keeping. According to James he gave Rettig directions as to where to go as they drove and after they left the gas station there was no conversation other than directions. James admitted his testimony was different from the story he had told earlier.

Defendant, age 23, testified on his own behalf. He stated he had been asked by James and Hufford to take them out to Coal Valley, Illinois for a party. He denied there was any other conversation. Rettig told of stopping

at the Dividend Bonded Gas Station so the man called Tucker could get cigarettes for them. James and Hufford gave the direction and defendant did not know where they lived. Rettig testified that there was no conversation about anything other than directions. As soon as he stopped the car James opened the door and pulled Tucker out. He saw Hufford jump out of the car and hit Tucker in the jaw and he saw James and Hufford go through his pockets. Thereafter, at James' direction, they drove back to James' apartment. The defendant testified there was no conversation about rolling or murdering the victim.

Other witnesses testified to the discovery of the victim's body along the road and the autopsy establishing cause of death as blows on the head with a blunt object.

■■ Defendant first argues his conviction ought to be reversed because the State failed to prove the identity of the victim beyond a reasonable doubt citing, *Davis v. People,* 19 Ill. 73 and *Shepherd v. People,* 72 Ill. 480. The general rule is that the identity of the victim as charged in the indictment is one of the elements of the offense which must be proved by the State. Such a requirement enables the defendant to prepare his defense and also is necessary to prevent the defendant from being placed in double jeopardy. Identity testimony may also be considered as a foundation for establishing continuity of events and circumstances as testified to by different witnesses. The sufficiency of identity testimony is related to the issues involved. Where the identity of a victim is disputed the evidence required will be viewed differently than when the issue is undisputed. For example where motive and consequently mental state may depend directly on the identity of the victim and his relationship to the defendant, the issue may be crucial and more persuasive proof is required.

■■ The sheriff, his chief investigator and a pathologist all referred to the victim as Robert Tucker, the name by which he was also described in the indictment. The testimony of these witnesses was admittedly based on the identification of the victim by his son, none of the witnesses being personally acquainted with the victim. No objection to the testimony was interposed by the defendant and the fact of whether the victim was Robert Tucker was not disputed. Testimony based on hearsay is not incompetent and we perceive no reason why the sufficiency of the facts proved ought to be later questioned when the facts were not disputed and the testimony regarding identity not objected to. *People v. Francis,* 356 Ill. 74, 190 N.E. 106.

Defendant also advances the argument that the evidence is not sufficient to prove him guilty of the offenses charged beyond a reasonable doubt. According to defendant he was not a participant in the of-

fenses and the evidence is insufficient to warrant any contrary conclusion. ■■ Relying on *Jones v. People*, 166 Ill. 264, 46 N.E. 723, defendant insists that there is no evidence that he aided, abedded or assisted in the commission of the offenses and his mere presence was not a criminal offense. We agree with the defendant that as in the *Jones* case a conviction ought not to be sustained absent evidence of participation therein. We however disagree with defendant that either the *Jones* case or the facts upon which it is based furnish any authority for concluding that defendant in the case at bar was an innocent bystander.

We have detailed some of the evidence earlier in this opinion and to support defendant's position it would be necessary to ignore the testimony of James, the accomplice, as well as the circumstances revealed by the testimony of other witnesses bearing on defendant's guilt.

■■ There is ample evidence from which it may be inferred that Tucker was drunk and that both his mental and physical faculties were substantially impaired. When Tucker's condition, his age and the circumstances of their meeting are taken into account defendant's denial of any contemplated wrongdoing is without support. Even though defendant may not have physically assaulted the victim there is substantial credible evidence that he participated in the commission of the offenses. See *People v. Neukom*, 16 Ill.2d 340, 158 N.E.2d 53.

Defendant also argues that he was denied a fair trial on account of the incompetency of his attorney. During and prior to his trial defendant was represented by privately retained counsel of his own choosing. A different attorney represents defendant on this appeal and according to such attorney defendant's trial counsel conducted the trial so incompetently as to amount to no representation as in *People v. Sommerville*, 42 Ill.2d 1, 245 N.E.2d 461.

■■ We believe it is sufficient to say that an examination of the record does not support defendant's claim that his trial counsel was incompetent or acted incompetently. The matters now complained of can be regarded as matters of strategy and not evidence of incompetency. For example defendant's present counsel argues that trial counsel should have objected to the hearsay testimony regarding identity of the victim. It is true that such an objection could have been made and probably would have been sustained. If the identity of the victim had been made an issue in this way it might well have been that the victim's son would have been called to testify, a circumstance unlikely to have been any benefit to defendant. The other complaints of Appellate counsel are of a similar vain and in our view represent the natural differences which attorneys may have regarding how the defense of a case should be undertaken. Defendant's trial repre-

sentation was competent and vigorous and in our view defendant's rights were fairly protected. For the foregoing reasons the judgment of the Circuit Court of Rock Island County is affirmed.

Judgment affirmed.

RYAN, P. J., and ALLOY, J., concur.