THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE GRANT, Defendant-Appellant.

First District (5th Division)   No. 62002

Opinion filed April 23, 1976.

Theodore M. Becker and Edward M. Genson, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John T. Theis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

In a bench trial, defendant was found guilty of robbery and sentenced to a term of 5 to 15 years. On appeal, he contends that (1) it was reversible error to allow the prosecution to introduce prior statements of the complaining witness which were inconsistent with his trial testimony; (2) he was denied the right to effective assistance of counsel; (3) the evidence was insufficient to establish his guilt beyond a reasonable doubt; and (4) certain alleged errors individually or in totality were plain, prejudicial and reversible.

On a late summer afternoon James Nesbitt purchased food stamps worth $96 at a currency exchange. He placed them in an envelope, which he put in his pocket. Then, accompanied by a friend, he proceeded through an alley towards his home. Suddenly someone "jumped on" his back, forcing him to his knees. The assailant reached into his pocket, took the envelope containing the food stamps, and ran from the scene. Nesbitt and his friend searched the alley but did not find his assailant.

In his direct testimony, Nesbitt said that later that day he saw defendant in a police car, and he then answered questions as follows:

"Q. What, if anything, did you do or say when you went up to the police car?

A. I looked over in the car and I seen the stamps, I say, 'Look, my stamps.'

Q. And what else did you say, if anything?

A. No more than I say, 'I think them my stamps.'

Q. And did you tell the police anything, was there anything in the police car at that time?

A. Wasn't more in there than him.

Q. Who are you referring to?

A. Willie Grant.

Q. He was in the police car?

A. Yes.

Q. Did you tell the police anything concerning Willie Grant?

A. I say looked like him.

A. Pardon me?

A. I told them looked like the man got my stamps."

He testified also that the State's exhibit 1, an envelope, was similar to the one containing his food stamps and that the State's exhibit 2, food stamps

worth $96 which were in the envelope, looked like the ones he had purchased that day.

On direct examination, he testified concerning a conversation with defendant after the incident in question as follows:

"Q. Do you recall the place where you were at when Mr. Grant came up and talked to you?

A. We was at a restaurant. I was in there when he came in.

Q. He came in. Do you recall what he said to you?

A. No. he didn't come up say anything to me. I was standing there talking to old friends of mine, I say if I had the money I would go south to see my brother because he was sick.

Q. And what happened then?

A. So this guy I was talking to said: 'Well, I ain't got it.' So Willie came up and he say, 'Well, how much money you think you need?' I said: 'Well, five hundred dollars.' He said: 'Well, I ain't got it right now but I might can get it. . .' said '. . .now I have to go and see can I get it.'

Q. And he gave you $100.00, didn't he?

A. Yes, he gave it to me.

Q. This was after you had testified at the grand jury, is that correct?

A. Yes, but that ain't got nothing to do with it.

Q. That was after you testified at the grand jury?

* * *

A. Yes.

Q. That was after you testified at the preliminary hearing, correct?

A. Yes."

On cross-examination, Nesbitt stated he and his friend had been drinking vodka prior to the robbery but that he was "just feeling good." He testified that he could not positively identify the envelope and food stamps introduced at trial as those which had been stolen from him, inasmuch as they were quite common and did not bear his name or any unusual markings. Finally, he stated that he was not sure defendant was the man who had taken his food stamps.

During his redirect examination, he repeated his uncertainty as to whether defendant was the offender, and the prosecutor then claimed surprise as to this testimony and asked permission to examine him "as an adverse witness." Defense counsel objected to the claim of surprise, pointing out that the prosecutor had conferred with the witness a few minutes before and for the additional reason that the State was attempting to impeach its own witness. The court ruled that the

prosecutor could refresh the witness's recollection, and that portion of the preliminary hearing transcript was read wherein Nesbitt had positively identified defendant as the man who had robbed him. Nesbitt acknowledged this prior testimony, but he was not asked whether it refreshed his recollection, so that his testimony remained the same.

Officer Charles Daly testified that on the afternoon in question he was on patrol in an unmarked squad car when he observed defendant running out of an alley, look in his direction, and throw a packet to the ground. Daly left the squad car, announced his office, and ordered defendant to stop. Daly then picked up the discarded packet and noted that it was an envelope containing food stamps. He identified State's exhibits 1 and 2 as the envelope and the food stamps and stated that the book value of the stamps totaled $96. He testified that defendant said he was the owner of the stamps. Daly then placed defendant in the squad car, and shortly thereafter Nesbitt appeared and told the officer he had just been robbed of his food stamps, and he identified defendant as the offender. Daly then informed defendant that he was under arrest and, after advising him of his constitutional rights, took him to the police station where Nesbitt signed a complaint. Defendant did not testify in his own behalf nor did the defense call any witnesses.

Opinion

■■ Defendant first contends that it was reversible error to permit the introduction of Nesbitt's prior inconsistent statements made at the time of his arrest and at the preliminary hearing. It is well established that a party calling a witness vouches for his credibility and may not impeach him except as results incidentally from proving a state of facts differing from that sworn to by the witness. *(People v. Kraus,* 377 Ill. 539, 37 N.E.2d 182; 37 Ill. L.&Pr. *Witnesses* §226 (1958).) However, where a witness gives surprising testimony adverse to the party calling him, that party may be permitted to refresh the recollection of the witness through the use of prior statements. The general rule was clearly stated in *People v. Michaels,* 335 Ill. 590, 592, 167 N.E. 857, 858:

> "The rule is, that when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination show that the witness is giving unexpected testimony, and to specifically call the attention of the witness to former statements made by him for the purpose of refreshing his memory or awakening his conscience and cause him to relent and speak the truth if he was lying."

In *People v. Rongetti,* 344 Ill. 278, 284, 176 N.E. 298, *cert. denied,* 284 U.S. 656, and *People v. Quevreaux,* 407 Ill. 176, 183, 95 N.E.2d 62, *cert.*

*denied,* 340 U.S. 938, the court held that where a State witness gives surprise testimony during cross-examination by defendant, the State may be permitted to examine the witness and call his attention to former statements for the purpose of refreshing his memory or awakening his conscience. Both *Rongetti* and *Quevreaux* noted that such a procedure and does not amount to an impeachment by the State of its own witness. See also *People v. Marino,* 44 Ill. 2d 562, 256 N.E.2d 770; *People v. Macias,* 39 Ill. 2d 208, 234 N.E.2d 783, *cert. denied,* 393 U.S. 1066; *People v. Williams,* 22 Ill. 2d 498, 177 N.E.2d 100, *cert. denied,* 369 U.S. 806; *People v. Wesley,* 18 Ill. 2d 138, 163 N.E.2d 500, *cert. denied,* 364 U.S. 845.

It is clear from the above cited authorities that in the instant case the trial court did not abuse its discretion in allowing the prosecution to examine Nesbitt concerning his prior testimony. Nesbitt's trial testimony elicited on cross-examination, expressing doubt as to the identity of defendant as the offender, was a surprise to the prosecution. The trial court was clearly aware of the purported use of the prior statements and allowed them only to refresh Nesbitt's recollection. The fact that they were read to him orally, rather than being submitted for his reading is insignificant since this was a bench trial. In any event, the record discloses that Nesbitt was not asked whether his recollection was refreshed, and he did not change his testimony after the questions were read. Moreover, it does not appear that the court relied upon the prior statements as substantive evidence in reaching its conclusion, as in *People v. McKee,* 39 Ill. 2d 265, 235 N.E.2d 625, cited by defendant. See *People v. Collins,* 21 Ill. App. 3d 800, 315 N.E.2d 916.

■■ Likewise, defendant challenges as improper impeachment certain testimony of Daly concerning statements made by Nesbitt at the time of defendant's arrest. At trial, Daly testified:

"Q. What if anything occurred at that time?

A. We were then approached by another citizen, and Mr. Nesbitt, Mr. Nesbitt stated he had just been robbed of his food stamps.

Q. What if anything else did Mr. Nesbitt state?

A. He identified Willie Earl Grant as the offender."

There was no objection to this testimony, and we conclude therefore that any such error was waived. Furthermore, it appears that when Nesbitt made this identification, Daly then placed defendant under arrest. Under these circumstances, we believe the reasoning in *People v. Houston,* 21 Ill. App. 3d 209, 214, 315 N.E.2d 192, 196, U.S. *cert. denied,* 420 U.S. 936, is controlling: There, the court stated:

"We note that, in one respect, the officer's testimony was objectionable. It tended to rehabilitate the credibility of Mrs. Mitchell * * * because it disclosed that Mrs. Mitchell had made

prior statements which were consistent with her trial testimony * * *. We think, however, that in this case the rehabilitating aspect of the officer's testimony does not appear to have been the primary purpose for which the State introduced the testimony, but was merely an *inevitable consequence of the legitimate purpose of having the officer explain how he had come to arrest appellants.*" (Emphasis added.)

Here, also, we believe the testimony was proper to establish a valid arrest of defendant.

■■ Defendant next contends that his legal representation at trial was inadequate. This argument is based upon the alleged failure of defense counsel to protect defendant's rights by failing to present various motions and objections.

Defendant's burden in establishing the inadequacy of trial counsel was recently restated in *People v. Gill,* 54 Ill. 2d 357, 297 N.E.2d 135, *cert. denied,* 414 U.S. 1144. Quoting from its decision in *People v. Harper,* 43 Ill. 2d 368, 374, 253 N.E.2d 451, the court states the rule at pages 363-64:

"Before a conclusion of inadequate representation can be reached the defendant must demonstrate the actual incompetence of counsel as reflected by the manner of carrying out his duties as a trial attorney and it must further appear that substantial prejudice results therefrom, without which the outcome would probably have been different."

Relative to his fourth amendment claim, defendant contends counsel was incompetent in failing to adequately raise the motion to suppress and to persist in that motion at trial. It appears that a preliminary hearing was originally held. No written motion was made and the object of the motion is uncertain; *i.e.,* whether to suppress physical evidence or to quash defendant's arrest. Defendant argues that his attorney did not adequately challenge the existence of sufficient cause for his arrest or move to suppress the stamps and packet taken incident thereto. We believe his argument is predicated on a misinterpretation of when the arrest took place.

■■ The rule regarding admissibility of evidence dropped or discarded is well settled. If no arrest has taken place at the time of the drop, the evidence is considered to be abandoned and the legality of the subsequent arrest is irrelevant to the admissibility of the evidence. (See *People v. Bridges,* 123 Ill. App. 2d 58, 259 N.E.2d 626; *People v. Jackson,* 98 Ill. App. 2d 238, 240 N.E.2d 421.) an arrest involves three elements— (1) authority to arrest; (2) assertion of that authority with intention to effect an arrest; and (3) restraint of the person to be arrested. (*People v. Ussery,* 24 Ill. App. 3d 864, 321 N.E.2d 718; *People v. Colon,* 9 Ill. App. 3d

989, 293 N.E.2d 468.) Here, the evidence indicated defendant discarded the packet when he saw the squadrol. Certainly he was not under arrest at that time. In light thereof, any motion to suppress would properly have been denied. Whether the motion was overlooked or improperly presented, defendant could not have been prejudiced because of the futility of the motion.

Regarding the arrest, Officer Daly stated none was made until after Nesbitt had appeared and identified the stamps and the defendant. Prior to that time, defendant was merely stopped for questioning, and such conduct does not constitute an arrest. (*Terry v. Ohio*, 392 U.S. 1, 22, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *Ussery; People v. Howlett*, 1 Ill. App. 3d 906, 274 N.E.2d 885.) Following Nesbitt's arrival, we believe that probable cause then existed for the arrest, and any motion to quash would have been fruitless. Thus, a failure to so move could not have prejudiced defendant.

Defendant further asserts that his counsel should have persisted in the motions to suppress and quash and should have renewed them at trial when the complainant indicated he was not sure that defendant was the offender or that the envelope or stamps introduced at trial belonged to him. He argues that counsel was mistaken as to the law when, in response to an inquiry from the bench as to whether his questioning was intended to relitigate the motion to suppress, he stated that "We have only one motion to suppress, your Honor" and that, once it is heard, "I cannot suppress the law."

■■■ While the rule in Illinois is that, concerning the same evidence, a defendant is granted but one motion to suppress; nonetheless, a trial court is not without jurisdiction to reconsider the denial of such motion made at the preliminary hearing but may do so in exceptional circumstances or where additional evidence to that submitted upon the first hearing becomes available. (*People v. Holland*, 56 Ill. 2d 318, 307 N.E.2d 380; *People v. Armstrong*, 56 Ill. 2d 159, 306 N.E.2d 14; *People v. Hopkins*, 52 Ill. 2d 1, 284 N.E.2d 283.) Here, we do not believe the wavering of Nesbitt's identification of either defendant or the physical evidence under the facts of this case constitute sufficient exceptional circumstances to justify a reconsideration of the motion. Nesbitt still indicated that defendant was the one "he thought got them." The food stamps were in the exact amount stolen from the witness, and they were in defendant's possession shortly afterwards. The envelope looked "just like" the one Nesbitt had earlier, and they were "wrapped up with rubber just like" the food stamps Nesbitt previously had in his possession. We therefore can perceive of no exceptional circumstances which would justify relitigating the motion, and therefore we can see no prejudice to defendant in counsel's failure to so move. The court could only conclude from the facts adduced that the arrest of defendant was predicated on sufficient cause,

and that the packet of stamps was dropped before the arrest and thus properly admitted. *Bridges; Jackson.*

■■ Defendant next contends counsel was incompetent in failing to move to suppress the witness' identification of defendant at trial. He argues that Nesbitt was intoxicated at the time of the robbery, was attacked from behind and therefore did not have an adequate opportunity to observe his attacker, and further that the identification of defendant at the squadrol was "extremely suggestive."

We note that at the preliminary hearing, Nesbitt was positive in his identification of defendant as the offender. It would appear from his testimony that he was sufficiently sober and was afforded adequate opportunity for identification at the time of the robbery. Further, the allegedly "suggestive" identification was not one arranged by the police and is therefore distinguishable from the one-man show up in *People v. Sanders,* 4 Ill. App. 3d 494, 280 N.E.2d 269, cited by defendant. Here, there was no show up or police action but an unsolicited identification of the offender by the victim. Thus, again we believe there is no merit to the contention that such a motion should have been presented.

■■ Defendant next says that his counsel was incompetent in failing to object to the "bolstering testimony" of Officer Daly concerning Nesbitt's identification of defendant at the squadrol. Further, defendant contends his counsel was incompetent in failing to object to the admission of testimony concerning alleged improper efforts by defendant to influence Nesbitt and in eliciting on the cross-examination of Daly evidence of defendant's prior arrests and detentions.

As a general rule, the decision as to when and to what matters objection should be made are matters of trial strategy. *(People v. Stewart,* 24 Ill. App. 3d 605, 321 N.E.2d 450; *People v. Rettig,* 131 Ill. App. 2d 687, 264 N.E.2d 835.) Thus, it has been stated that "[f]ailure of a lawyer to make a motion, to object to improper testimony during a trial, or to object to portions of a prosecutor's final argument, does not establish lack of competent representation." *(Stewart,* at 612.) Likewise, in *People v. Walker,* 22 Ill. App. 3d 711, 715, 318 N.E.2d 111, it was stated:

> "All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions."

■■ Regarding Daly's testimony, we believe the officer could properly relate the circumstances he observed surrounding the arrest of defendant. His statement regarding Nesbitt's identification of defendant as the offender was proper in the context of determining the existence of sufficient cause for the arrest. In any event, we do not believe counsel's failure to object constituted such incompetency as would substantially

prejudice defendant or result in a different outcome. *Gill.*

■■ Regarding the testimony concerning the payment by defendant to Nesbitt, we note that objection was originally made concerning a proper foundation. The foundation was laid, and no further objection was made. While we believe counsel should have persisted in his objection, we cannot say that such failure demonstrated a lack of competent representation. *Stewart; Walker.*

■■ Likewise, the inquiry by his attorney regarding defendant's prior arrest record was introduced in an attempt to establish that defendant was traditionally arrested for any crime occurring in the neighborhood. This was aimed at challenging the probable cause for arrest and was clearly a matter of trial strategy.

■■ Another contention of defendant is that the evidence was insufficient to prove him guilty beyond a reasonable doubt. In this regard, we note that Nesbitt's initial identification was quite definite both in his original statement to Officer Daly and in his testimony at the preliminary hearing. His trial testimony indicated that he thought the defendant was the offender, although he was "not sure." The offender had jumped on Nesbitt's back and forced him to his knees, and defendant was found shortly after the robbery in possession of food stamps in the exact amount taken from the witness. Nesbitt testified that they were wrapped up in the same fashion as those taken from him and looked "just like" his stamps and envelope. All these factors could properly have led the trial court to conclude beyond a reasonable doubt that a robbery had been committed by defendant. We believe this conclusion was proper.

■■ Finally, defendant contends that his sentence of 5 to 15 years was excessive. The offense of robbery has been designated a Class 2 felony. (Ill. Rev. Stat. 1973, ch. 38, par. 18—1.) The Unified Code of Corrections provides that the minimum term of imprisonment for a Class 2 felony shall be any term in excess of one year, unless the court—having regard to the nature and circumstance of the offense and the history and character of defendant—sets a higher minimum term. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3).) Although defendant has a prior history of several misdemeanor convictions and one for burglary, we believe that the nature and circumstance of the offense involved here merited a less severe sentence, yet one in excess of the minimum. We therefore direct that the *mittimus* be amended to impose a term of imprisonment of not less than three nor more than nine years. As modified, the judgment is affirmed.

Sentence modified.

Judgment affirmed.

BARRETT and DRUCKER, JJ., concur.