THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH WATKINS, Defendant-Appellant.

First District (1st Division) No. 1—87—2766

Opinion filed September 24, 1990.—Rehearing denied December 26, 1990.

230

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Jeanette Sublett, and Michael J. Drake, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Joseph Watkins, was convicted of robbery and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, pars. 18—1, 12—4, respectively), and sentenced to two concurrent 12-year prison terms. On appeal, defendant contends that: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) he was denied his sixth amendment right to effective assistance of counsel; (3) the State's comments during closing argument deprived him of due process of law; (4) the trial court abused its discretion when it denied defendant's pretrial motion to bar the State from impeaching him with a prior conviction; (5) the 12-year sentence imposed upon defendant for robbery was excessive; (6) the trial court improperly sentenced defendant to a 12-year prison term for aggravated battery; (7) the trial court erred in failing to advise defendant of the possibility of treatment under the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6301 *et seq.*); and (8) defendant's 12-year sentences for robbery and aggravated battery were improperly disparate to the three-year sentence imposed upon codefendant, Gregory Burns,[1] for the same offenses. For the following reasons, the judgment of the trial court is affirmed and, by agreement of the parties, defendant's sentence for aggravated battery is reduced to five years.

The record sets forth the following facts relevant to this appeal.

---

[1]Prior to defendant's trial, Gregory Burns pled guilty to robbery and aggravated battery.

On September 3, 1986, at approximately 8:15 p.m., Selmo Hunter was assaulted by two males as he left the One Stop Food & Liquor Store in Chicago. At trial, Hunter testified that one of the assailants grabbed him and threw him down on the sidewalk. The other assailant then kicked him in the back of the head, and one of them took his wallet. Hunter identified one of the assailants as Gregory Burns, but was unable to make a positive identification of the other.

Steve Green, custodian at the One Stop Food & Liquor Store, testified that, on September 3, 1986, while he was cleaning up the store parking lot, he saw Gregory Burns throw Selmo Hunter to the ground and kick him in the face. He then saw defendant take Hunter's wallet and run. At trial, Green equivocated as to how long he had known defendant and as to how many times he had previously seen him. At first, Green stated that he had known defendant for seven or eight years and had seem him five times previously. On cross-examination, Green stated that he saw defendant for the first time on the day of the incident. He then admitted that what he had stated on direct was incorrect. Green then explained that when he had stated he had seen defendant five times earlier, he had meant five times on the day of the incident. Green further testified that after he saw the assault on Hunter, he went into the store and alerted the security guard, Bennie Harmon. The following day, Green viewed a lineup and identified Gregory Burns as one of the assailants. At that time, he also told the police about defendant's involvement. However, he never viewed a lineup in which defendant appeared.

Next, Bennie Harmon, security guard at the One Stop Food & Liquor Store, testified that on September 3, 1986, at approximately 8:20 p.m., he saw both defendant and Gregory Burns in front of the One Stop Food & Liquor Store. Later, when he saw Hunter lying on the ground, Burns and defendant had already left.

Officer Eugene Poole of the Chicago police department then testified that he had arrested defendant on October 15, 1986. Two weeks earlier, Poole had learned that Gregory Burns had been arrested for the Hunter incident and that defendant was also involved. When Pool asked defendant about the robbery, defendant replied, "I was there but I didn't do anything."

The State then rested its case. Defense counsel indicated that she had a motion. However, the court said the motion would be heard later outside the presence of the jury and, at this time, they would continue with the defense witnesses.

Defendant then took the stand on his own behalf and testified that on September 3, 1986, at approximately 8 p.m., he was sitting on

a garbage can across the street from the One Stop Food & Liquor Store, talking on a pay telephone, when he saw some guys running behind him toward a crowd. It looked like a fight was taking place. When he finished his telephone conversation, defendant walked toward the crowd. The security guard came out of the One Stop Food & Liquor Store, and two males ran from the crowd. Defendant saw Hunter lying on the sidewalk. Someone had put a coat under Hunter's head, and two other people were picking up his groceries. When defendant spotted Hunter's wallet lying on the ground, he picked it up and put it in his pocket. Steve Green saw defendant pick up the wallet and asked defendant what was in it. Defendant replied that he had not looked inside of it yet.

When the police and paramedics arrived, Hunter regained consciousness, grabbed his groceries, and got into his car. The police followed him. Several of defendant's friends then asked him for some of the money from Hunter's wallet. Defendant gave some money to a couple of his friends, but did not give any to Green, who asked defendant to pay back a gambling debt. Defendant further stated that on October 15, 1986, he had been in a lineup, but had not been identified.

The defense then rested its case. In rebuttal, the State admitted into evidence a certified statement of a conviction of theft against defendant, dated October 6, 1986. On surrebuttal, defendant admitted that he had taken Hunter's wallet. Defendant's motion for a directed verdict was then denied. Following deliberations, the jury found defendant guilty of the offenses of robbery and aggravated battery. Thereafter, defendant's motion for a new trial was denied and, following a hearing in aggravation and mitigation, he was sentenced to two concurrent 12-year prison terms. Defendant's timely appeal followed.

Initially, defendant argues that the State failed to prove him guilty of aggravated battery and robbery beyond a reasonable doubt on the ground that the evidence introduced by the State either did not link him to the crime or was discredited because of its numerous inconsistencies. It is well established that it is the function of the trier of fact to assess the credibility of the witnesses, to resolve any inconsistencies in their testimony and to draw reasonable inferences from that testimony. On review, the appellate court is not to substitute its judgment for the trier of fact. Rather, it is to review the evidence in a light most favorable to the prosecution and to reverse the judgment only if no rational trier of fact would have found the defendant guilty of the crimes charged beyond a reasonable doubt.

*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ In the present case, defendant was convicted of robbery and aggravated battery. Pursuant to section 18–1(a) of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 18–1(a)), "[a] person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." Further, pursuant to section 12–4(b)(10) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 12–4(b)(10)), "[a] person *** commits aggravated battery if he *** [k]nowingly and without legal justification and by any means causes bodily harm to an individual of 60 years of age or older." Thus, in order for defendant to be proven guilty of robbery and aggravated battery, the State must establish beyond a reasonable doubt that defendant took Hunter's wallet from him by force or with imminent threat of force and that he caused bodily harm to 80-year-old Hunter. The State argues that it met this burden with Hunter's lineup and in-court identification of defendant, the corroborating testimony of two occurrence witnesses and defendant's own testimony that he had been at the scene and had taken the wallet.

■ With respect to Hunter's lineup and in-court identifications, the following colloquy took place on cross-examination by defense counsel at trial:

"DEFENSE: Then [the police officers] took you in and you looked at some men, didn't you?

HUNTER: Right.

DEFENSE: And [defendant] was one of those men, wasn't he?

HUNTER: I think so.

DEFENSE: And you didn't tell the police that [defendant] was the other person or persons that robbed you, you didn't identify him, did you?

HUNTER: I think I did.

DEFENSE: This is very important, Mr. Hunter—.

THE COURT: Just ask the question.

DEFENSE: I want you to think about this, Mr. Hunter. When you looked at that lineup are you sure—you know you wanted to be fair, you looked at those 5 men and [defendant] was in that lineup and you didn't identify him as one of the people that robbed you, in September you identified Gregory Burns—.

STATE: I will object.

THE COURT: Let the man answer the question.

DEFENSE: I want you to take your time—.

THE COURT: He is taking his time.

\* \* \*

HUNTER: I was kind of hazy on the individual before me when he was called out but to be fair I said it looks like the man.

DEFENSE: Miss Prosecutor, do you have a picture of the lineup photograph that was taken on October 15th.

STATE: Could we have a sidebar, Your Honor?

\* \* \*

[side bar]

THE COURT: Do you have a picture?

STATE: They don't take photographs of a lineup when no identification is made.

\* \* \*

DEFENSE: It would be fair to say, Mr. Hunter, that you were never really certain about [defendant], wouldn't that be fair to say?

HUNTER: Not necessarily so but another party there that confronted me going to my car had blocked my way to the car was the party I had purchase—.

DEFENSE: I am talking about [defendant], Mr. Hunter. It would be fair to say you were never really certain about him, isn't that right?

HUNTER: No, not necessarily not certain, I saw the man, I had a glimpse, but I didn't get a chance to gaze at him and to kind of—.

DEFENSE: In a matter of seconds?

HUNTER: An impression.

DEFENSE: This all occurred in a matter of seconds, isn't that right sir?

HUNTER: Yes."

As the foregoing indicates, Hunter never gave an unequivocal identification of defendant as one of his assailants. Instead, he merely identified a photograph of the lineup in which he had identified Gregory Burns. Vague and doubtful identification cannot sustain a conviction beyond a reasonable doubt. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153.) Therefore, on its own, Hunter's identification does not serve to establish defendant's guilt.

 █ The State also relies on the testimony of Bennie Harmon, the security guard at the One Stop Food & Liquor Store, and on the testimony of Steve Green. Bennie Harmon's testimony merely placed

defendant at the scene, a fact defendant does not dispute. Therefore, it is unpersuasive. However, Steve Green's testimony does directly link defendant to the crime. Green stated that he saw defendant take Hunter's wallet and run. These events were corroborated by Hunter, who testified that after he had been kicked in the head, someone took his wallet. It is well established that a positive identification by one eyewitness who had ample opportunity for observation may be sufficient to support a conviction. (*People v. Williams* (1986), 143 Ill. App. 3d 658, 493 N.E.2d 362; *People v. Outlaw* (1978), 67 Ill. App. 3d 327, 384 N.E.2d 898.) The fact that Green's testimony was riddled with inconsistencies is a matter to be resolved by the trier of fact, not the reviewing court. (*People v. Dixon* (1984), 122 Ill. App. 3d 141, 460 N.E.2d 858.) Moreover, the inconsistencies related to how long Green had known defendant and to how many times he had seen him previously. In light of Green's positive identification of defendant, these points have little, if any, significance. Further, although Green admitted on cross-examination that he had "practiced and rehearsed" his testimony prior to taking the stand, he clarified on redirect that he was never told by anyone what to say on the stand.

With respect to defendant's own testimony, he admitted to being at the scene and to taking Hunter's wallet, but denied being involved in the assault on Hunter. Instead, he claimed he just saw the wallet lying on the ground and picked it up. Contrary to the State's position, defendant's testimony did not establish the elements of aggravated battery or robbery. However, we find that Green's testimony and his unequivocal eyewitness identification, together with other corroborative testimony as to the events surrounding the incident, were sufficient to support defendant's conviction of robbery and aggravated battery beyond a reasonable doubt.

Finally, we find defendant's reliance on *People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153, to be misplaced. In *Ash*, an accomplice testified against Ash in exchange for leniency and the promise not to be incarcerated with men he had previously testified against. Defendant's allegation that Green identified him because he would not give Green some of the money taken from Hunter's wallet is not analogous to the *Ash* situation.

Next, defendant argues that he was denied his sixth amendment right to effective assistance of counsel. In order to establish ineffective assistance of counsel, defendant must show that his trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different had there not been ineffective assistance of

counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Upon review, there is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance, and any errors in trial strategy or judgment alone will not establish ineffective assistance of counsel. *People v. Bell* (1987), 152 Ill. App. 3d 1007, 505 N.E.2d 365.

In the present case, defendant cites to the following alleged errors made by trial counsel which he claims resulted in ineffective assistance of counsel: (1) failure to impeach Hunter's false testimony that he had made a lineup identification of defendant; (2) incorrectly informing the jury that Hunter had identified the defendant in court; (3) incorrectly informing the jury that defendant was on probation at the time of the offense; (4) failure to object to the prosecutor's false statements; (5) failure to obtain a ruling on the motion for a directed verdict; and (6) failure to tender a jury instruction on the lesser included offense of theft. Defendant contends that the most "flagrant" examples of defense counsel's ineffectiveness occurred when defense counsel failed to impeach Hunter's testimony that he had made a lineup identification of defendant; when defense counsel incorrectly informed the jury that Hunter had identified defendant in court; and when defense counsel failed to object when the State misinformed the jury as to Hunter's identification of defendant.

As previously discussed, at trial, Hunter testified that he thought he had seen defendant in a lineup and had identified him. Hunter admitted that he was "kind of hazy on the individual" before him, but "to be fair" thought he looked like his assailant. Hunter further stated that he had had only an "impression" of his assailants. Knowing that no photograph had been taken, defense counsel attempted to impeach Hunter by asking the prosecutor for a photograph of the lineup. At that point, the prosecutor requested a sidebar, during which she stated that photographs are not taken of lineups when no identification has been made. When the court learned that defense counsel had known that there was no lineup photograph before she had even asked the question, he warned her not to "pull that again," and the court proceeded to tell the jury that no photograph had been taken. Although testimony by a police officer that Hunter had not identified defendant at the lineup may have served to impeach Hunter, Hunter's testimony had already been severely discredited by its equivocal and hazy content. Accordingly, in our view, any error by defense counsel in failing to impeach Hunter's testimony was harmless.

Defendant's analogy to *People v. Bell* (1987), 152 Ill. App. 3d

1007, 505 N.E.2d 365, on the issue of impeachment is unpersuasive. In *Bell*, defendant was convicted of the murder of his parents. At trial, defendant's sole defense was that he had shot his father in self-defense after his father had shot his mother. On behalf of the State, defendant's brother had testified that his parents had had a good relationship and that he had never heard them threaten, curse or swear at each other. Defense counsel made no attempt to impeach the brother's testimony even though seven potential defense witnesses would have testified as to defendant's parents' violent and aggressive tempers, and the fact that they had often engaged in heated arguments. Defendant, the sole defense witness, testified as to his parents' violent natures. However, his testimony was never corroborated. Instead, it was directly contradicted by his brother's testimony. On appeal, the *Bell* court held that defendant had been denied effective assistance of counsel by the cumulative effect of counsel's conduct at trial, including failure to investigate or to call witnesses regarding the victims' propensity toward violence and the father's acts of aggression against the accused, and other omissions which could not be justified as trial tactics. Unlike the situation in *Bell* where the jury heard unequivocal testimony which directly contradicted defendant's defense, the jury in the present case heard the hazy, uncertain testimony of Hunter, which, by itself, put Hunter's credibility at issue.

▆▆▆ Regarding defense counsel's closing argument comments as to Hunter's identification of defendant, defendant suggests that his counsel's comments prejudiced him by seeming to bolster an identification that had never occurred. Contrary to defendant's arguments, when placed in context, defense counsel's comments stress the incredibility of Hunter's testimony and, accordingly, did not prejudice defendant.

> "COUNSEL: Why was the picture of Gregory Burns at that lineup, in fact, shown constantly before you, ladies and gentlemen? 'Well,' says Mr. Hunter, 'I thought it was Mr. Watkins.' He says that today. 'Well, did you tell the police that?' 'No, I didn't really tell the police.'
>
> Mr. Watkins testified and he says, 'He didn't identify me. I was standing in that lineup on that October date.' Well, ask the State if Mr. Watkins' version isn't the correct version. And I'm not blaming Mr. Hunter because you heard from Mr. Green, rehearsal, if you hear it enough, you start to believe it enough, that they went through four in two days.
>
> Now, if the State instead of just bringing up a probation for that theft, they wanted to prove it beyond a reasonable doubt,

if they could prove it beyond a reasonable doubt, bring the officers in who conducted the lineup, the ones who say, 'Well, he wasn't sure.' Don't you think it's reasonable? Don't you think the circumstances would demand that if any course of identification was made of Mr. Watkins of any sort, that they would have taken the picture just as they did with Little Greg, and that would have been paraded before you?

'Well,' says the State, 'he wasn't sure. He wanted to be correct.' Fine. If you're not sure, that sure translates to a reasonable doubt. If he wasn't sure, then how can he come into a courtroom approximately a year later and identify him as the person who did it? 'Well,' says the State, 'we don't need Mr. Hunter.'

Counsel is just stirring up the mud, stirring up the waters."

■■■ Defendant also argues that defense counsel's failure to object to the prosecutor's closing argument comments that Hunter had identified defendant was prejudicial. Specifically, defendant refers to the following comments made by the State:

"Selmo Hunter told you [defendant] took his wallet, and Steve Green did.

\* \* \*

\*\*\* And he says that, 'I walked out of there, out of the One-Stop, and my way was barred by the man that I identified later as Gregory Burns, and my money was taken from my pocket by that man.

And he said, and I'm going to quote him, 'To be fair, I said it looked like the man.' "

The above comments are proper as comments on the evidence or as inferences to be drawn from the evidence. (*People. v. White* (1985), 134 Ill. App. 3d 262, 479 N.E.2d 1121.) Therefore, any objection raised by defense counsel would have been properly overruled. Defendant's reliance on *People v. Rogers* (1988), 172 Ill. App. 3d 471, 526 N.E.2d 655, as support for his argument that defense counsel improperly failed to object to the prosecutor's comments is misplaced. In *Rogers*, the prosecutor interjected personal views, improperly bolstered the credibility of police officers' testimony, commented on defendant's prior convictions as substantive proof that defendant was familiar with the legal system, and argued that defendant was a liar when there was no evidence at trial that contradicted defendant's testimony.

■■■ Defendant further argues that defense counsel prejudiced him by allowing the State to misinform the jury that defendant had

been on probation at the time he had committed the offense against Hunter and by emphasizing this misinformation on rebuttal. As a result, defendant claims that the jury convicted him "thinking that while serving one sentence, he committed another crime." The record belies this argument. During its rebuttal, the State introduced a certified statement of defendant's conviction for theft on October 6, 1986. Subsequently, during defendant's rebuttal, defense counsel attempted to undermine the relevance of the conviction.

"Let's go one step further. What did they say in rebuttal? 'Well, Mr. Watkins is on probation. He's on probation for that theft, and he is a thief, and he is a bad person. Because he's a bad person, you have to find him guilty.

It's the same thing like pointing and shouting and saying only certain parts of the evidence. Really? Let's talk about what kind of bad thief and clever, cunning, cruel criminal he is. One, if he were such a cruel, clever, cunning criminal, why couldn't he come up with a better lie? Why couldn't he come up with twenty million of his criminal alibis. Because he told you what happened there. He was making a phone call. He saw what he thought was a fight.

\* \* \*

What is it when you don't have evidence? You throw mud. You say that a man's on probation."

In viewing defense counsel's comments in context, we are not persuaded that they provide grounds for reversible error.

■ Next, defendant argues that defense counsel erred when she failed to request a ruling on her motion for a directed verdict at the close of the State's case. When the State rested its case, the trial court asked defense counsel if she had a motion to make. When she replied that she had, the court stated:

"I will hear the motion outside the presence of the jury. The motion will be held in abeyance until we have a break so we can keep on going with the testimony."

Defendant was then called to the stand as the sole defense witness. Following dismissal of the jury, the court asked defense counsel if she wanted to make her motion for a directed verdict in writing. She answered that she would rather make the motion orally and proceeded to do so. The trial court then denied the motion.

Defendant cites to section 115—4(k) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—4(k)) and to *People v. Trump* (1978), 62 Ill. App. 3d 747, 379 N.E.2d 370, as support for his position that defense counsel erred in failing to request a rul-

ing on the motion at the close of the State's case. Section 115—4(k) provides:

"(k) When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." (Ill. Rev. Stat. 1987, ch. 38, par. 115—4(k).)

Contrary to defendant's position, section 115—4(k) does not mandate that defense counsel move for a directed verdict at the close of the State's evidence or that the trial court make its ruling at the close of the State's evidence. It is sufficient if the ruling is made at the close of all evidence. Further, *People v. Trump* is not analogous to the present situation. In *Trump*, defendant moved for a directed verdict at the close of all evidence. The trial court reserved its ruling until the jury returned its verdict. On appeal, the reviewing court held that the trial court had not erred in reserving its ruling. Defendant claims that the outcome of the trial would have been different if the trial court had ruled on his motion at the close of the State's case, but declines to explain how such a ruling would have changed the outcome. Accordingly, we find no grounds for reversal.

■■ Defendant also argues that defense counsel erred in not tendering theft instructions to the jury when the evidence indicated that defendant had taken Hunter's wallet from the ground and had kept it. It is well recognized that a defendant may be entitled to have the jury instructed on a lesser included offense of the one with which he has been charged. The rationale is that an instruction on a lesser included offense provides an additional option to a jury, which may believe the defendant is guilty of something, but is uncertain as to defendant's guilt of all of the elements of the more serious offense. *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413.

The *Bryant* rationale does not apply in the present case for the principal reason that defendant was not only convicted of robbery, he was also convicted of aggravated battery. In order for the jury to have convicted him of the latter offense, it would have had to conclude that defendant had caused bodily harm to Hunter. This element of physical force is also present in the offense of robbery. However, it is not an element of the offense of theft. Accordingly, because the jury found that defendant had caused bodily harm to Hunter during the incident in which Hunter's wallet was taken, we are not persuaded that had the jury instruction for theft been given, the outcome

of the trial would have been different.

 Defendant next argues that the State's comments during closing argument deprived him of due process of law. Defendant admits that some of the alleged errors during the State's closing argument were not objected to at trial, but requests that this court address these errors under the plain error doctrine on the ground that they affected substantial rights. Specifically, defendant contends that the following prosecutorial comments violated his constitutional rights: (1) the State's comment that Hunter had identified defendant in court and at a lineup; (2) the State's quotation from Green's stricken testimony that he had been afraid of defendant; (3) the State's comment on defendant's post-arrest silence; (4) The State's comment on defendant's failure to present evidence; and (5) the State's interjection of prosecutorial testimony.

The first three alleged errors were not objected to at trial or raised in defendant's post-trial motion. As a result, because we do not find that these errors rise to the level of plain error, we find that defendant has waived their review on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) With respect to defendant's allegation that the State erroneously commented on defendant's failure to impeach Steve Green or that the State interjected its own testimony, neither of these allegations constitutes reversible error, individually or cumulatively.

Regarding Steve Green, the State made the following comment:

"If Steve Green was using the name Charles as an alias, if he had been convicted using that name for some crime involving dishonesty or some felony, you can be sure that the defense would have had a certified statement of conviction."

Not only has defendant failed to indicate how he was prejudiced by this comment, we are not persuaded that this comment was directed at defendant's failure to present evidence as to his innocence. With respect to the State's comment on the fact that the State had not told Green what to say on the stand, this is well within the accepted range of prosecutorial closing argument as a comment on the evidence. *People v. White*, 134 Ill. App. 3d 262, 479 N.E.2d 1121.

 ██ Next, defendant contends that the trial court improperly denied his pretrial motion *in limine* to bar the State from using his prior conviction for theft to impeach his credibility because the court failed to determine if the prejudice of admitting this evidence outweighed the probative value. Both the State and defendant agree that when a defendant takes the stand, he may be impeached by a prior conviction for a felony or for a crime involving dishonesty or false

statement if the conviction is less than 10 years old. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) In the present case, the conviction for theft was less than one year old.

Although the trial court must weight factors relating to the prejudice and probative value of evidence of a prior conviction in reaching its determination as to the admissibility of that evidence, the court is not required to make an express evaluation in open court of those factors. (*People v. Purnell* (1984), 129 Ill. App. 3d 253, 472 N.E.2d 183.) Rather, absent an express indication that the trial court was unaware of its obligation to balance these factors (*People v. Smith* (1979), 73 Ill. App. 3d 577, 392 N.E.2d 347), a reviewing court will assume that the trial court gave the factors appropriate consideration. *People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276.

In the present case, although the trial court responded immediately to the motion, there is no indication that it was unaware of its obligation to balance these factors. Accordingly, we conclude that the trial court properly denied defendant's motion *in limine* to bar impeachment by a prior conviction.

Defendant next argues that the 12-year sentence imposed upon him for robbery was excessive. In raising this issue, defendant cites to the three-to seven-year statutory sentencing range for robbery (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(5)) and to the 7- to 14-year sentencing range under the extended-term provision (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)(4)), but neglects to cite to the statutory provisions which provide that if the victim is 60 years of age or over, robbery is a Class 1 felony with a statutory sentencing range of 4 to 15 years. (Ill. Rev. Stat. 1987, ch. 38, pars. 18—1(b), 1005—8—1(a)(4).) In the present case, the victim was 80 years old. Accordingly, the range of 4 to 15 years as well as the extended-term provision apply.

Defendant contends that in imposing the sentence, the trial court failed to properly consider pertinent mitigating factors and the constitutionally mandated objective of rehabilitation. In support of his contention, defendant relies on *People v. Grant* (1976), 38 Ill. App. 3d 62, 347 N.E.2d 244. The situation in *Grant* is factually distinguishable from the present case. In *Grant*, the victim testified that while he and his friend were walking down an alley on their way home from a currency exchange, someone jumped on his back, forced him to his knees and took $96 worth of food stamps. The facts in *Grant* do not indicate the victim's age. By contrast, in the present case, the 80-year-old victim was thrown to the ground and rendered unconscious by kicks to the head. Thus, not only is the age of the victim a known factor,

the act itself was more physically violent and reprehensible.

■■ ■ In addition, contrary to defendant's suggestion, the trial court is not required to expressly indicate its consideration of all mitigating factors. If mitigating factors are argued before the court, absent some evidence to the contrary, it is presumed that the trial court considered them. (*People v. Alcazar* (1988), 173 Ill. App. 3d 344, 527 N.E.2d 325; *People v. Burba* (1985), 134 Ill. App. 3d 228, 479 N.E.2d 936.) In the present case, mitigating factors were presented to the trial court. Thus, the presumption applies. Accordingly, in light of the violence of the offense, the relevant statutory sentencing provision and the presentation of mitigating factors to the trial court at the sentencing hearing, we conclude that the trial court properly imposed a 12-year sentence on defendant for robbery.

Next, defendant contends that the trial court improperly sentenced him to a 12-year prison term for aggravated battery when the maximum sentence for aggravated battery is five years or, under the extended-term provision, 10 years. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—1(a)(6), 1005—8—2(a)(5).) With respect to the extended-term provision, defendant argues that because aggravated battery, a Class 3 felony, was not the more serious offense for which he was convicted, he was not eligible for an extended-term sentence. Therefore, defendant requests that his sentence for aggravated battery be vacated and either the cause be remanded for resentencing or this court reduce his sentence to five years, the statutory maximum for aggravated battery.

■■ The State concedes that it was error to sentence defendant to an extended term for the offense of aggravated battery when he had been convicted of a more serious offense and requests that this court reduce defendant's sentence for aggravated battery to five years. Therefore, by agreement of the parties, defendant's sentence for aggravated battery is reduced to five years.

■■ Defendant further argues that the trial court erred in failing to advise him of the possibility of treatment under the Alcoholism and Substance Abuse Act (the Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 6301 *et seq.*) when the trial court had sufficient information from the presentence investigation report to form a reasonable belief that he was a drug addict who could benefit from the treatment under the Act. Section 22 of the Act states, in pertinent part:

> "If a court has reason to believe that an individual convicted of a crime is an addict and the court finds that he is eligible to make the election provided for under Section 21, the court shall advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by a licensed

program designated by the Department." (Ill. Rev. Stat. 1987, ch. 111½, par. 6322.)

Section 4.1 of the Act defines an "addict" as: "[A]ny person who habitually uses any drug, chemical, substance or dangerous drug other than alcohol so as to endanger the public morals, health, safety or welfare or who is so far addicted to the use of a dangerous drug or controlled substance other than alcohol as to have lost the power of self control with reference to his addiction." (Ill. Rev. Stat. 1987, ch. 111½, par. 6304.1.) When the information conveyed to the trial court regarding a defendant's drug problems is sufficient to give the court reason to believe that defendant is an addict, the court is required to inform the defendant of the Act's alternatives. However, mere use of controlled substances does not render a defendant an addict, and, consequently, a court is not required to inform the defendant of the possible application of the Act. *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 545 N.E.2d 942.

In the present case, the only information given to the court regarding defendant's history was the following two sentences which appeared in the presentence investigation report:

"Joseph Watkins states he has never used alcohol but did use cocaine. He refused to elaborate or explain further."

This statement suggests only that defendant had used cocaine at one time, but does not use it anymore. In our view, the statement is insufficient to have caused the trial court to form a reasonable belief that defendant is an addict. Therefore, the trial court did not err in failing to advise defendant of the possibility of treatment under the Act.

In addition, those cases relied upon by defendant are factually inapposite and unpersuasive. In each of those cases, there was extensive evidence of each defendant's drug addiction presented to the respective trial courts: *People v. Davis* (1981), 95 Ill. App. 3d 1097, 420 N.E.2d 1035 (defendant had voluntarily enrolled in a drug rehabilitation program; told the probation officer he had been a heavy drug user for approximately 10 years and was under drug influence at the time he committed the offense; at the sentencing hearing, told the court he had committed crimes to use drugs); *People v. Chaput* (1981), 100 Ill. App. 3d 982, 427 N.E.2d 597 (at the sentencing hearing, defendant testified that at the time he had committed the offense, he had been under the influence of drugs and alcohol; defendant considered himself to have a drug problem; corroborative letter from defendant's rehabilitation counselor); *People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024 (the presentence investigation report stated that defendant was an addict); *People v. Strange* (1984), 125 Ill. App.

3d 43, 465 N.E.2d 616 (the presentence investigation report indicated that defendant had been using heroin and "Ts and blues" for the past 20 years; the report recommended treatment in a drug abuse program; at the sentencing hearing, defendant asked to be paroled to a rehabilitation program); *People v. Beasley* (1982), 109 Ill. App. 3d 446, 440 N.E.2d 961 (defendant, age 23, stated that he had been using marijuana since high school and had used heroin, cocaine and "tees and blues" regularly during incarceration); *People v. Melson* (1976), 36 Ill. App. 3d 71, 343 N.E.2d 258 (defendant broke into a drug store in order to steal drugs; the presentence investigation report indicated that he had a serious dependence on drugs; letters from defendant's mother and his probation officer stated that defendant had told them he could not control his use of drugs; probation officer recommended drug rehabilitation treatment).

Finally, defendant argues that his 12-year sentences for robbery and aggravated battery were improperly disparate to the three-year sentences imposed upon codefendant, Gregory Burns, for the same offenses. In light of the fact that, by agreement of the parties, defendant's sentence for aggravated battery is reduced to five years, this analysis is limited to the sentence imposed for the robbery conviction.

 As a general principle, the trial court is given considerable discretion in determining an appropriate sentence, and its determination will not be reversed on appeal absent an abuse of that discretion. (*People v. Franklin* (1987), 159 Ill. App. 3d 923, 512 N.E.2d 1318.) Although an arbitrary and unreasonable disparity between the sentences of codefendants who are similarly situated is impermissible, the fact that one defendant receives a longer sentence than another does not establish a *per se* violation of fundamental fairness. (*People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154.) A disparity in sentences may be supported by such factors as a different degree of involvement in the offense and prior criminal background. *People v. Franklin*, 159 Ill. App. 3d 923, 512 N.E.2d 1318.

Defendant contends that he and Burns participated relatively equally in the offense. According to defendant, when Hunter left the store, Burns grabbed him, knocked him to the ground, and started to beat him. While Burns was beating him, defendant took Hunter's wallet and left the scene. Further, defendant contends that his background and that of Burns are such that they do not justify the sentencing disparity. Defendant had three prior convictions for nonviolent crimes which occurred 10 years prior to the current offense: possession of marijuana, theft, and unlawful use of a weapon. He was sentenced to probation for each conviction. By contrast, Burns had four

prior convictions: battery, unlawful possession of ammunition, theft and possession of a stolen motor vehicle. Despite these alleged similarities, the pivotal distinction in the present case is the fact that Burns had pled guilty to the offenses of robbery and aggravated battery.

It is well accepted that a trial court may grant leniency in sentencing to a defendant who by his plea ensured prompt and certain application of correctional measures against him. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 458 N.E.2d 1370.) In *Bergman*, defendant was sentenced to a term of 25 years, and his codefendant, who had pled guilty, to a six-year term for convictions of unlawful delivery and possession of a controlled substance. The reviewing court affirmed the sentence disparity on the ground that it was warranted and supported by the plea of guilty and the trial court's disbelief that defendant had not been the moving party or had a motive to participate.

Similarly, in the present case, codefendant Burns pled guilty. In addition, defendant admits that he is the one that took Hunter's wallet and maintained control over it. Thus, with respect to the robbery conviction, defendant appears to have had a greater degree of involvement, and was at least as culpable as, if not more culpable than, codefendant Burns. Therefore, we conclude that the trial court did not abuse its discretion in sentencing defendant to twelve years for the offense of robbery, while codefendant Burns received a three-year sentence.

For the foregoing reasons, the judgment of the trial court is affirmed; the sentence imposed for the offense of robbery is affirmed; and the sentence imposed for the offense of aggravated battery is reduced to five years.

Affirmed in part; modified in part.

O'CONNOR and MANNING, JJ., concur.