**2025 IL 130447**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 130447)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
DEVIN JOHNSON, Appellant.

*Opinion filed October 31, 2025.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Overstreet and Holder White concurred in the judgment and opinion.

Justice Cunningham specially concurred, with opinion, joined by Justices Theis and Rochford.

**OPINION**

¶ 1    At issue before this court is whether a trial court must decide a defendant's midtrial motion for a directed verdict before proceeding to the defense's evidence. The appellate court did not answer this question and instead found that defendant

forfeited appellate review of the issue. 2023 IL App (4th) 221021-U. The appellate court affirmed defendant's conviction and sentence. *Id.* ¶ 64. For the following reasons, we hold that the trial court must decide the motion before advancing to the defense's evidence. Still, we find the error, in the instant case, does not call for reversal under the plain error rule. We find the evidence is not closely balanced, and we find that defendant failed to satisfy his burden in establishing second prong plain error. Therefore, we affirm the judgment of the appellate court.

¶ 2                                      BACKGROUND

¶ 3        Defendant was charged with attempted first degree murder (720 ILCS 5/8-4(a), (c)(1)(D) (West 2020)) and aggravated battery with a firearm (*id.* § 12-3.05(e)(1)) for the shooting of Kelvin Bell. At defendant's jury trial in Rock Island County circuit court, the evidence established that Bell was shot in the early morning hours of January 24, 2021, while seated in the front passenger seat of defendant's vehicle, parked outside of defendant's residence.

¶ 4        Kristopher Kuhlman, a sergeant with the Rock Island Police Department, testified that he was dispatched at around 2 a.m. on January 24, 2021, to respond to a report that a subject had been shot. Upon arriving at the scene, Kuhlman observed a white Cadillac with the passenger side door ajar. There was a man standing in the open doorway of the vehicle, whom Kuhlman identified as defendant, and a victim, Bell, seated in the front passenger seat of the vehicle. Defendant, who was distraught and emotional, stated that Bell had been shot. Kuhlman observed that Bell had what appeared to be a gunshot wound to the right side of his head. Bell was making sounds and movements, but he could not speak. Kuhlman also observed what appeared to be a gunshot hole in the passenger side window.

¶ 5        Ibrahim Ramirez was the patrol officer who arrived at the scene after Kuhlman. Ramirez identified a woman at the scene as Alisha Johnson, defendant's wife. Ramirez's body-worn camera was played to the jury. In the video, defendant and Alisha both state that Bell was seated in the Cadillac when they left to run to the store and that they returned to find him shot.

¶ 6        Andrew Lawler, a patrol officer, testified that he searched for evidence after arriving at the scene. Lawler observed a shell casing and an unfired bullet on the

ground near the vehicle. The bullet was on the ground just outside the passenger door, and the shell casing was approximately three feet in front of the vehicle in the roadway.

¶ 7    Dr. Scott Schepker treated Bell in the hospital emergency department when Bell was brought in by paramedics in the early morning hours of January 24, 2021. Bell had a gunshot wound to the right side of his head. There was swelling and bleeding at the entrance site of the gunshot wound, and Bell was moaning but not responding. Bell had some movement of his right extremities but was not moving his left extremities, which was consistent with trauma to the right side of the brain. Bell had a blood alcohol level of 0.116, and he tested positive for cocaine metabolites. Bell was transferred to the University of Iowa Health Center in Iowa City, due to the extent of his injuries.

¶ 8    A neighbor of defendant, Roe Ko, testified that he heard people talking and a single gunshot at around 1 a.m. on January 24, 2021. John Trost, another nearby neighbor, testified that he was awake when he heard a single gunshot at 1:26 a.m. on January 24, 2021. Ryan Harker, also a nearby neighbor, testified that he heard a "really loud bang" at approximately 2 a.m. The police did not recover any local camera footage in the neighborhood.

¶ 9    Garrett Alderson, a criminalist with the Rock Island Police Department, explained how a handgun functions. A magazine is fed into the bottom of the grip of the handgun, and a cartridge, or unfired bullet, is engaged from the magazine when the slide is charged, or racked, backwards. Once the handgun with a magazine is fired, the magazine auto-loads the next cartridge. If there is a cartridge in the chamber and the handgun is racked again, that cartridge already in the chamber is ejected, and a new cartridge will be fed into the chamber.

¶ 10    Sean Roman, now retired, was the primary detective on the case. He testified that the Cadillac in which Bell was shot belonged to Alisha but was typically driven by defendant. Roman interviewed defendant and Alisha several times at the police station. Their initial statements were consistent and provided that defendant arrived home around 1:30 a.m. and he and Alisha drove to the nearby 7-Eleven to buy cigarettes. When they left, Bell was inside the Cadillac parked outside defendant's house. When defendant and Alisha returned from 7-Eleven, they discovered Bell had been shot. Alisha phoned 911 at that time, at 2 a.m. Defendant initially denied

going anywhere other than 7-Eleven but was confronted with evidence that his vehicle was observed on camera driving past the 7-Eleven. In response to the evidence, defendant stated that he and Alisha drove past the 7-Eleven to go to a different store but drove back to 7-Eleven because the other store was closed.

¶ 11    In defendant's second interview, he stated that he was present in the car when Bell was shot. Defendant observed the shooter run away, but defendant did not get a good look at the shooter. Defendant and Alisha then drove around after the shooting to "keep [defendant] out of the situation." Defendant claimed he did not attempt to get immediate help for Bell because he believed Bell had died.

¶ 12    In defendant's third police interview, defendant told Roman that he accidentally shot Bell. Defendant had been up for two days on a drug and alcohol binge. Defendant just wanted Bell to get out of his vehicle, and defendant thought the safety was on the handgun. Defendant could not explain the unfired bullet found on the ground by the passenger door. Defendant panicked after the shooting and threw the gun into a river when he and Alisha were driving around. Roman testified that the gun was never recovered.

¶ 13    Alisha testified that she was sleeping in the early hours of January 24, 2021, when defendant ran into the bedroom and woke her up. That is reflected in the home security video recovered from Alisha's phone. There is no audio on the home security video, but Alisha testified that defendant was crying and hysterical. Defendant had a gun in his hand that he put on the bedroom floor, and he told Alisha to get it away from him. Alisha picked up the gun and stored it under the kitchen sink. Defendant changed his clothing, and Alisha put those clothes in the washing machine in the basement. Defendant went out the back door, and Alisha went to her vehicle out front and drove around and picked up defendant. They drove to Milan and then returned, stopping at 7-Eleven. Alisha did not see defendant with a gun in the vehicle, nor did she see him dispose of a gun.

¶ 14    A recorded call that defendant made from jail was played for the jury. In the call, defendant talked about Bell and stated that the shooting was an accident. Defendant stated that he pointed the gun to scare Bell, thinking the gun's safety was on.

- 4 -

¶ 15        Darlene Bell, the mother of Bell, testified that she received a telephone call from Bell at 1:21 a.m. on January 24, 2021, and she spoke with him for about 13 seconds. She did not hear any arguing or commotion in the background. Darlene also testified regarding Bell's injuries as a result of the shooting. Darlene testified that Bell, who was 41 years old, resided in a facility where he was cared for by medical staff. Bell could no longer hold a normal conversation. He was paralyzed on the left side, he had no hearing, and he lost one eye. His tracheostomy had been removed since the accident, but his speech was limited to some mumbling.

¶ 16        After the State rested, defense counsel moved for a directed verdict. The trial court stated that it was taking the motion under advisement. The court then asked if the defense would be presenting any evidence. Defense counsel did not object to the trial court's decision to take the motion for a directed verdict under advisement. Instead, defendant was admonished concerning his right to testify, and defendant waived his right to testify.

¶ 17        As the parties were set to begin the jury instruction conference, the State asked the court to clarify whether it had denied the motion for a directed verdict or had taken it under advisement. The trial court repeated that it had taken the motion under advisement. Again, defense counsel did not object. After the jury instruction conference, the State asked the court if it was going to decide defendant's motion for a directed verdict. The trial court stated it would rule after the verdict. Again, defendant did not object.

¶ 18        When closing arguments were set to begin, the court brought the jury into the courtroom, and the defense rested without presenting any evidence. The parties then delivered their closing arguments. The jury found defendant guilty of both charges, attempted first degree murder and aggravated battery with a firearm. The jury also found the State had proven defendant personally discharged the firearm that proximately caused great bodily harm to Bell.

¶ 19        After the jury returned its verdict, defense counsel asked for a ruling on the motion for a directed verdict. The trial court stated that the matter was still under advisement because it "wanted to do some legal research." The court indicated that it would issue a written decision shortly. The court subsequently denied defendant's motion for a directed verdict by written order, stating that, "[u]pon evaluating all the evidence presented by the State in the light most favorable to the State, this

court finds that a reasonable jury could find the State had proven its case beyond a reasonable doubt."

¶ 20 Defendant filed a posttrial motion arguing, *inter alia*, that the trial court erred by reserving its ruling on his motion for a directed verdict because it gave defendant a false impression of the strength of the State's evidence during the trial and affected his decision as to whether to testify. Defendant asserted that this uncertainty substantially prejudiced him. The court denied the posttrial motion. The court indicated it believed it was a matter of trial strategy for defense counsel not to request a ruling on its motion for a directed verdict and to allow the matter to remain under advisement. The court noted defense counsel could have requested that the court rule on the motion if it was crucial to defendant's decision to testify. The matter proceeded to the sentencing hearing, where the court merged the two convictions and imposed a 50-year sentence for attempted first degree murder.

¶ 21 Defendant appealed, contending that (1) the trial evidence was insufficient to prove him guilty of either attempted first degree murder or aggravated battery with a firearm, (2) he was denied a fair trial when the trial court failed to rule on his motion for a directed verdict at the close of the State's evidence, and (3) his 50-year sentence was excessive. The appellate court affirmed. 2023 IL App (4th) 221021-U.

¶ 22 As to defendant's challenge to the sufficiency of the evidence on the charge of attempted first degree murder, defendant claimed the evidence did not establish that he had the specific intent to kill Bell. *Id.* ¶ 30. The appellate court disagreed, finding the trial evidence, viewed in the light most favorable to the State, was sufficient to prove beyond a reasonable doubt that defendant possessed the intent to kill when he shot Bell. *Id.* ¶ 34. Given that the aggravated battery with a firearm conviction was merged with defendant's conviction for attempted first degree murder and no sentence was entered on the battery count, the appellate court did not address the sufficiency of the evidence to sustain that conviction. *Id.* ¶ 54. The appellate court also found that the trial court did not err in imposing the 50-year sentence. *Id.* ¶ 62.

¶ 23 The remaining issue, which is the subject of this appeal, was defendant's argument that the trial court denied him a fair trial by failing to rule on his motion for a directed verdict. *Id.* ¶ 41. Defendant contended that the trial court's failure to rule prejudicially interfered with his right to testify. *Id.* The appellate court found

the issue forfeited because defendant did not object to the trial court's decision to reserve its ruling on the motion and did not ask for a ruling before making the decision whether to testify. *Id.* ¶ 43. Citing a conflict among appellate court district opinions, the appellate court also found that there was no clear or obvious error for purposes of plain error, because the law was not sufficiently settled on the issue of whether the trial court could reserve ruling at the time of defendant's trial. *Id.* ¶ 53. As such, the court concluded that the issue was not reviewable under the plain error doctrine. *Id.* ¶ 54.

¶ 24 Defendant filed a petition for leave to appeal in this court. His petition challenged only the appellate court's judgment as to defendant's directed verdict claim. The petition did not raise any issue with the appellate court's judgment with respect to the sufficiency of the evidence or his sentence. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Dec. 7, 2023).

¶ 25                                ANALYSIS

¶ 26 Defendant contends the trial court denied him of a fair trial when it failed to decide his midtrial motion for a directed verdict before advancing the trial to the defense's case. He argues the error warrants reversal because the State cannot prove the error harmless beyond a reasonable doubt. The State claims defendant forfeited review of the issue by failing to object when the trial court proceeded to the defense's case without first deciding defendant's motion for a directed verdict. Defendant responds, arguing that moving for a directed verdict and raising the issue in his posttrial motion preserved the issue for appellate review. Because defendant failed to object to the trial court's procedural decision, we find the issue forfeited.

¶ 27 Both a trial objection and a written posttrial motion raising the issue are required to preserve appellate review of alleged errors that could have been raised during trial. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Absent a trial objection and a failure to raise the issue in a posttrial motion, the issue is forfeited for review on appeal. *People v. Ward*, 154 Ill. 2d 272, 293 (1992). This rule serves two important purposes. First, "failure to raise the issue at trial deprives the circuit court of an opportunity to correct the error, thereby wasting time and judicial resources." *People v. Jackson*, 2022 IL 127256, ¶ 15 (citing *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009)). Second, the "rule also prevents criminal defendants from sitting

idly by and knowingly allowing an irregular proceeding to go forward only to seek reversal due to the error when the outcome of the proceeding is not favorable." *Id.* (citing *People v. Ford*, 19 Ill. 2d 466, 478-79 (1960), and *People v. Carlson*, 79 Ill. 2d 564, 577 (1980)). The failure to preserve the issue generally precludes appellate review. *People v. Herron*, 215 Ill. 2d 167, 175 (2005).

¶ 28        Defendant's motion for a directed verdict alone is insufficient to preserve the issue for appellate review. Here, defendant challenges the trial court's procedural decision to move on to the defense's case without first deciding defendant's motion for a directed verdict. To preserve the issue, defendant was required to object. See *People v. Lindbeck*, 202 Ill. App. 3d 831, 837-38 (1990) (to preserve claim based on directed verdict, defendant must object to trial court's decision to defer its ruling on the motion). As the trial court explained during the posttrial motion hearing, defendant "could have asked [the court] to rule, especially if it was going to make a difference," or defendant could have informed the court that a ruling was "crucial" to his decision to testify. Defendant never made this objection and, as a result, forfeited the issue for appellate review.

¶ 29        Defendant maintains that, if the issue is forfeited, we should still review his claim for plain error. The plain error rule is a narrow exception to forfeiture principles. *People v. Moon*, 2022 IL 125959, ¶ 21. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain error rule does not, however, call for the review of all forfeited errors, as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Id.*; *People v. Precup*, 73 Ill. 2d 7, 16 (1978).

¶ 30        Before addressing defendant's plain error argument, we begin by considering the State's assertion that defendant's forfeited claims are not even subject to plain error review. The State contends that, when a defendant does not testify at trial, he is foreclosed from arguing on appeal that the trial court erred in deferring its ruling on a motion for a directed verdict. The State's argument invokes two prior decisions from this court. See *People v. Patrick*, 233 Ill. 2d 62 (2009); *People v. Averett*, 237 Ill. 2d 1 (2010). *Patrick* and *Averett* both involved challenges to a trial court's blanket policy regarding motions *in limine* to exclude evidence of a defendant's prior convictions at trial. Under that policy, the trial court would not decide the

motion until the defendant testified at trial. In the consolidated appeal of *Patrick*, this court held that a trial court abuses its discretion under that blanket policy. *Patrick*, 233 Ill. 2d at 73. The *Patrick* court went on to determine that a claim based on this blanket policy was unreviewable, even for plain error, if the defendant did not testify at trial. *Id.* at 77. This court explained that, without the defendant's actual testimony, the reviewing courts would be forced to speculate on the substance of that testimony and the prosecution's questions on cross-examination. *Id.* at 77-78. Consequently, this court held that the defendant must testify and obtain a definitive ruling on his motion *in limine* before the issue could be reviewed on appeal. *Id.* at 79.

¶ 31        Subsequently, this court decided the consolidated appeal of *Averett*, which involved the same blanket policy regarding motions *in limine* as in *Patrick*. See *Patrick*, 237 Ill. 2d 1. The *Averett* defendants did not testify and acknowledged that, under *Patrick* a defendant's choice against testifying rendered the claim unreviewable on appeal. *Id.* at 11-12. The defendants offered alternative bases for reviewing the error, arguing that their testimony was irrelevant to any of the alternative grounds for reversal. *Id.* at 12. They offered three alternative theories to allow review independent of their choice to testify because none of the theories required a showing of prejudice to obtain a reversal of the trial court's decision. Specifically, the defendants contended the error could be reviewed as (1) structural error warranting automatic reversal without a showing of prejudice, (2) constitutional error reviewable regardless of their choice to testify, or (3) second prong plain error not subject to a showing of prejudice.

¶ 32        This court rejected all three arguments. First, the court found the error did not qualify as structural error because the error was subject to harmless error review. *Id.* at 14. Second, this court found the error did not deprive the defendants of their constitutional right to testify or remain silent. *Id.* at 17. While the blanket policy made a defendant's decision to testify more difficult strategically, the deferred ruling in no way restricted a defendant's ability to testify or remain silent. *Id.* at 15-16. Finally, adhering to *Patrick*, this court found the error could not be reviewable as second prong plain error given the defendants' choice against testifying. *Id.* at 19. Consequently, this court "conclude[d] that the trial courts' decisions to defer ruling on the defendants' motions under a blanket policy [were] unreviewable on appeal because the defendants chose not to testify at trial." *Id.* at 23.

¶ 33    We decline to extend the reach of *Patrick* and *Averett* beyond the unique circumstances presented in those decisions. The nature of the motion in *Patrick* and *Averett* (motion *in limine*) is distinct from the motion for a directed verdict. A motion *in limine* to exclude prior convictions directly affects the scope and substance of a defendant's potential testimony. Here, by contrast, the midtrial motion does not directly affect the scope of any *potential* testimony. Rather, the midtrial motion for a directed verdict is directed at the State's evidence, which has *already* been presented. Accordingly, we reject the State's reliance upon *Patrick* and *Averett* and find the respective holdings from those decisions have no bearing on whether the instant issue is reviewable on appeal. Defendant is not foreclosed from requesting plain error review.

¶ 34    The plain error rule allows courts to review forfeited errors under two alternative prongs, when a clear and obvious error occurred and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Herron*, 215 Ill. 2d at 177. Each prong is intended to ensure the same thing, a fair trial. *Id.* at 179. Defendant maintains the burden of establishing clear or obvious error. *People v. Reese*, 2017 IL 120011, ¶ 72. As always, the first step in plain error analysis is to determine whether a clear or obvious error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 35    Defendant contends the trial court committed a clear and obvious error in failing to rule on his midtrial motion for a directed verdict before proceeding to the defense's case. Specifically, defendant argues that said error violated section 115-4(k) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4(k) (West 2020)), as well as his constitutional right to testify or remain silent and his right to counsel. We begin with defendant's statutory argument based on section 115-4(k).

¶ 36    Section 115-4(k) of the Code permits a defendant to move for a directed verdict at either the close of the State's evidence (midtrial) or at the close of all evidence. It provides:

> "When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court

may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." *Id.*

The instant dispute revolves around timing and when the trial court must decide a midtrial motion for a directed verdict. Specifically, the issue is whether section 115-4(k) requires a trial court to decide the midtrial motion for a directed verdict before proceeding to the defense's case. Statutory interpretation is a question of law, which we review *de novo*. *People v. Bradford*, 2016 IL 118674, ¶ 15. Our primary goal in statutory interpretation is to ascertain and effectuate the legislature's intent. *People v. Giraud*, 2012 IL 113116, ¶ 6. The best indication of this intent is the statutory language, given its plain and ordinary meaning. *Id.*

¶ 37       Section 115-4(k) is silent as to when the trial court must decide a midtrial motion for a directed verdict. Both parties contend that this statutory silence supports their interpretation. Defendant argues that, absent express authorization in the statutory language, the trial court must decide the midtrial motion before proceeding to the defense's case. The State argues that, absent language indicating otherwise, the timing for a decision on such a motion is left to the discretion of the trial court, which may reserve its ruling and continue forward with the trial.

¶ 38       The appellate court in this case found "the law was not sufficiently settled" on whether a trial court is permitted to advance to the defense's case without first deciding the defendant's midtrial motion for a directed verdict. 2023 IL App (4th) 221021-U, ¶ 46. Citing a split among the districts on the issue, the appellate court found the error could not be clear or obvious for purposes of the plain error rule. *Id.* ¶ 54. We begin by examining those decisions. See *People v. Trump*, 62 Ill. App. 3d 747 (1978); *People v. Rascher*, 223 Ill. App. 3d 847 (1992); *People v. Watkins*, 206 Ill. App. 3d 228 (1990).

¶ 39       In *Trump*, 62 Ill. App. 3d 747, the appellate court considered the propriety of a reserved ruling on a motion for a directed verdict made at the close of all evidence (as opposed to a midtrial motion). *Trump* distinguished such a motion from a midtrial motion for a directed verdict made at the close of the State's evidence and offered reasons for prohibiting a trial court from proceeding further with the trial without first deciding the midtrial motion for a directed verdict. *Id.* at 748. The reason "is that the defendant ought not to be forced to decide whether to produce

- 11 -

evidence in his defense without knowing that the prosecution's evidence was sufficient." *Id.*

¶ 40    *Rascher*, 223 Ill. App. 3d 847, like this case, involved a defendant who filed a midtrial motion for a directed verdict at the close of the State's evidence. The trial court reserved its ruling and proceeded with the trial. Ultimately, the trial court denied the motion after the jury returned its verdict. *Id.* at 849. Although the appellate court had already found that defendant's conviction should be reversed based on the insufficiency of the evidence, it went on to comment on the trial court's decision to proceed further with the trial without deciding defendant's midtrial motion for a directed verdict. *Id.* at 854. Echoing the rationale in *Trump*, the appellate court found that "the defendant was entitled to a ruling on the motion rather than having to guess as to whether the State had proved its case." *Id.* The appellate court added, "[a] trial court should not reserve ruling on a motion for directed verdict at the close of the State's evidence" and "[t]he practice could be reversible error in some cases." *Id.* at 855.

¶ 41    The appellate court reached the opposite conclusion in *Watkins*, 206 Ill. App. 3d 228. The *Watkins* court declined to follow *Trump*, noting that section 115-4(k) did not mandate a trial court to rule on a motion for a directed verdict at the close of the State's evidence. *Id.* at 243. Consequently, the court held that section 115-4(k) did not operate as a *per se* bar on proceeding with a trial without first deciding the midtrial motion for a directed verdict. *Id.*; see *People v. Ramirez*, 244 Ill. App. 3d 136, 150 (1993) (rejecting defendant's claim that he was prejudiced by the trial court's failure to enter order of acquittal of codefendants at the close of State's evidence; defendant did not explain how calling codefendants as witnesses would be exculpatory, so he did not show prejudice in the reserved ruling); *People v. Faulkner*, 64 Ill. App. 3d 453, 457 (1978) (no abuse of discretion in reserving ruling on defendant's motion for a directed verdict and permitting the State to reopen its case).

¶ 42    Returning to the present case, we first reject the State's and the appellate court's conclusion that the statutory silence and mere existence of a district split on an issue necessarily means that no clear or obvious error occurred. The question is whether the error is "plain," meaning the error is "clear" or "obvious." See *People v. Piatkowski*, 225 Ill. 2d 551, 565 n.2 (2007). The fact that multiple appellate panels

- 12 -

from different appellate districts disagree over a general legal issue does not excuse the appellate court from substantively addressing the initial question in plain error review—whether clear or obvious error occurred based on the precise facts presently before the court. See generally *People v. Keene*, 169 Ill. 2d 1, 17 (1995) ("to determine whether a purported error is 'plain' requires a substantive look at it").

¶ 43 As to that question, we find the trial court committed clear or obvious error when it proceeded to the defense's case without first deciding defendant's midtrial motion for a directed verdict. We have reviewed the above cases, and we agree with the rationale espoused in *Trump* and *Rascher*. As we will explain, section 115-4(k) requires the trial court to decide defendant's motion for a directed verdict before proceeding to the defense's case.

¶ 44 As noted above, section 115-4(k) is silent as to when the trial court must decide a defendant's midtrial motion for a directed verdict. When a statute is silent on a particular point, we focus on the legislature's intent, and we will not interpret statutory silence in a way that defeats the purpose of that provision. *People v. Garcia*, 241 Ill. 2d 416, 422-23 (2011). The right to a directed verdict under section 115-4(k) is primarily rooted in the due process clause of the fourteenth amendment (U.S. Const., amend. XIV). Section 115-4(k) is intended to protect an accused against conviction "except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979). By enacting section 115-4(k), our legislature created a state law avenue meant to ensure this protection by allowing for a motion for a directed verdict as a means of testing the constitutional sufficiency of the evidence. Section 115-4(k) permits two opportunities to move for a directed verdict: at the close of the State's evidence (midtrial) and at the close of all evidence. 725 ILCS 5/115-4(k) (West 2020).

¶ 45 In this case, defendant moved for a directed verdict midtrial, which implicates additional substantial rights of the defendant. The midtrial motion requires the trial court to determine whether the defendant must proceed with the introduction of evidence in his defense, which implicates defendant's constitutional right to testify, present evidence in his own defense, or remain silent. *Patrick*, 233 Ill. 2d at 69 (a criminal defendant's right to testify on his own behalf, or not to testify at all, is

rooted in the fifth, sixth, and fourteenth amendments of the United States Constitution (see U.S. Const., amends. V, VI, XIV)). The purpose of such a motion is to avoid forcing a defendant into going forward with his own evidence when the State's case is insufficient. This is based on the principle that a defendant need not adduce *any* evidence in his defense unless the State presents sufficient evidence of the crime charged. Hence, the legislative purpose is achieved only when the trial court decides the midtrial motion before proceeding to the defense's case.

¶ 46    Reading section 115-4(k) as permitting the court to proceed to the defense's case without deciding the motion for a directed verdict thwarts the legislative purpose. "Making the important decision to testify without an opportunity to evaluate the actual strength of the State's evidence restricts the defense in planning its case." *Patrick*, 233 Ill. 2d at 69-70 (citing *Brooks v. Tennessee*, 406 U.S. 605, 612 (1972)). A defendant may testify and fill gaps in the State's evidence or supply further evidence of his guilt even if the State's own evidence is constitutionally insufficient to prove defendant's guilt. See generally 6 Wayne R. LaFave *et al.*, Criminal Procedure § 24.6(b) (Nov. 2024 Update). In cases involving multiple charges or multiple defendants, the choice to testify may hinge on whether the State's evidence is legally sufficient as to certain charges or other defendants.

¶ 47    Importantly, we do not believe this interpretation would impose an undue burden on the trial courts. "A motion for a directed verdict asserts only that as a matter of law that the evidence is insufficient to support a finding or verdict of guilty." *People v. Withers*, 87 Ill. 2d 224, 230 (1981). The decision on a motion requires the trial court to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt. *People v. Connolly*, 322 Ill. App. 3d 905, 914-15 (2001). When a motion is made after the State's case-in-chief, the trial court only considers the evidence presented by the State. At that point, the court has all the necessary information needed to decide the motion.

¶ 48    While we acknowledge that several foreign jurisdictions permit a trial court to reserve its ruling on a midtrial motion for a directed verdict, we emphasize that every respective foreign statute or rule expressly authorizes such a procedure. For example, Rule 29 of the Federal Rules of Criminal Procedure governs motions for directed verdicts in federal criminal proceedings and provides:

"(b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

Unlike section 115-4(k), Rule 29(b) includes an express authorization for a federal district judge to defer its ruling on a midtrial motion for a directed verdict. Other jurisdictions have followed the federal example, expressly authorizing reserved ruling for motions made at the close of the State's evidence. See Mich. S. Ct. R. 6.419 (updated May 1, 2025) (Michigan); N.Y. Crim. Proc. Law § 290.10 (McKinney 2024) (New York); W. Va. R. Crim. P. 29 (eff. Sept. 1, 1995) (West Virgina); D.C. Super. Ct. R. Crim. P. 29 (amended May 3, 2017) (District of Columbia). The common element is that the governing rule expressly authorizes the trial court to reserve its ruling and continue forward with the trial. By contrast, our legislature did not include such an express authorization in section 115-4(k). See *e.g.*, *Johnson v. State*, 158 A.3d 1005, 1014 (Md. 2017) (noting that, in the absence of express authorization, the trial court is not permitted to reserve ruling on a motion for directed verdict).

¶ 49 Accordingly, we hold that section 115-4(k) must be read as requiring the trial court to decide a midtrial motion for a directed verdict before advancing to the defense's case. That is not to say that the court must make an immediate ruling. Should the court find itself in a position where it is not yet prepared to make a ruling on the motion, it may take a recess to contemplate its decision on the motion. Only after the motion is decided, however, should the trial proceed to the defense's case. Therefore, we find the trial court in this case clearly or obviously erred by failing to comply with section 115-4(k) when it proceeded to the defense's case without first deciding defendant's midtrial motion for a directed verdict.

¶ 50 We now turn to the question of whether the trial court's violation of section 115-4(k) in this case is reversible under either prong of the plain error rule. Defendant maintains the burden of persuasion under both prongs. *Moon*, 2022 IL 125959, ¶ 20. Under the first prong of the plain error rule, when the evidence of a

defendant's guilt is closely balanced, "there is the possibility that an innocent person may have been convicted because of some error which is obvious in the record, but which was not properly preserved for review." *People v. Green*, 74 Ill. 2d 444, 454 (1979) (Ryan, J., specially concurring). The conviction of an innocent person due to an error during the pretrial or trial proceedings would be a miscarriage of justice; therefore, a reviewing court may find the forfeited error reversible under the first prong of the plain error rule when the evidence is closely balanced. *Id.*

¶ 51    The charge at issue, attempted first degree murder, requires the State to prove defendant performed an act that constituted a substantial step toward the commission of first degree murder. 720 ILCS 5/8-4(a), 9-1(a) (West 2020). This is a specific-intent crime and requires the State to prove that defendant performed the act with the specific intent to kill the victim. *People v. Lopez*, 166 Ill. 2d 441, 445-46 (1995). The central issue at trial and in this appeal is the element of intent.

¶ 52    After careful review of the record, we conclude the evidence is not closely balanced. The evidence showed that defendant aimed a loaded gun at Bell's head. The gun fired, and the bullet hit Bell's head. "The very fact of firing a gun at a person supports the conclusion that the person doing so acted with an intent to kill." *People v. Mitchell*, 209 Ill. App. 3d 562, 569 (1991). The recovery of an unfired cartridge on the ground outside of the vehicle suggested that defendant not only pointed the gun at Bell's head but also "racked" the gun to ensure a bullet was in the chamber before pulling the trigger. This is inconsistent with an accidental firing. Rather, defendant's acts are consistent with an intent to shoot the victim by making sure that a bullet was in the chamber before firing. Defendant's conduct after the shooting overwhelmingly confirmed that he intended to shoot Bell. Rather than seeking immediate emergency assistance, defendant fled the scene to his home. Inside his home, he attempted to cover up his involvement by having Alisha wash his bloodstained clothes. He then exited the back of the home, and Alisha drove her vehicle around back to pick him up, presumably to avoid being seen. Alisha then drove defendant away from the scene of the crime, where, by his own admission, he threw the weapon into a river.

¶ 53    The only evidence negating an intent is defendant's self-serving statements made during his final police interview and in his recorded phone call made from prison. Specifically, defendant claimed he meant only to scare Bell when he pointed

the gun at his head. He believed the safety was on and the gun went off by accident. This, however, does not render the evidence in the case close. Defendant lied several times in his statements to police. At the scene and again in his first interview at the police station, defendant stated that Bell was in the vehicle when he and Alisha left to go to 7-Eleven and, when they returned, defendant found Bell had been shot. Defendant changed his story during the second interview. That time, he claimed to be present for the shooting but could not get a good look at the shooter's identity. During his third interview, defendant finally admitted to shooting Bell and offered his self-serving excuse that he pointed the gun at Bell to scare him and the gun accidentally fired. His repeated inconsistent statements and his efforts to hide his involvement all lead to the conclusion that the shooting was intentional. Because the evidence is not closely balanced, the error is not reversible under the first prong of the plain error rule.

¶ 54    Next, defendant contends that the error is reversible as second prong plain error. Under the second prong of the plain error rule, "the concern *** is addressing unpreserved errors that undermine the integrity and reputation of the judicial process regardless of the strength of the evidence or the effect of the error on the trial outcome." *Jackson*, 2022 IL 127256, ¶ 24 (citing *Moon*, 2022 IL 125959, ¶¶ 26-27). Errors that fall under the second prong of the plain error rule are the types of error that "erode the integrity of the judicial process and undermine the fairness of the defendant's trial" (*Herron*, 215 Ill. 2d at 186), and these errors are rare (*People v. Rivera*, 227 Ill. 2d 1, 19-20 (2007) (citing *Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006))).

¶ 55    Second prong plain errors have been equated with structural error. *Thompson*, 238 Ill. 2d at 613-14. The structural error doctrine is intended to "ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver v. Massachusetts*, 582 U.S. 286, 294-95 (2017). Such errors presume prejudice because of the importance of the right involved. *Jackson*, 2022 IL 127256, ¶ 28 (citing *Herron*, 215 Ill. 2d at 187). The United States Supreme Court has identified structural error in a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction. *Recuenco*, 548 U.S. at 218 n.2. We may determine whether an error is

structural as a matter of state law regardless of whether it is deemed structural under federal law. *Averett*, 237 Ill. 2d at 13.

¶ 56　　We find defendant's contention that the error is second prong plain error warranting automatic reversal is contradicted by his arguments. In his brief to this court, defendant argued he preserved the issue for appellate review. He did not argue that the preserved error warranted automatic reversal. Instead, defendant exclusively argued the error was reversible because the State could not prove the error was harmless beyond a reasonable doubt. "Structural errors are not subject to harmless-error review." *Id.* at 14; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (errors subject to harmless error analysis generally do not fall within the class of structural errors). An error that, if preserved, would be considered exclusively for harmless error cannot evolve into structural error or second prong plain error when it is unpreserved. Given that defendant presented this error as the type of error subject to harmless error analysis and errors subject to harmless error analysis are not structural errors, we must conclude that defendant failed to satisfy his burden of persuasion in establishing second prong plain error.

¶ 57　　Finally, we consider defendant's argument that the trial court's deferred ruling on his midtrial motion for a directed verdict violated his constitutional right to testify or remain silent because it deprived him of crucial information as to the strength of the State's evidence before he decided to testify. According to defendant, this, in turn, deprived him of the guiding hand of counsel because the deferred ruling affected counsel's ability to advise defendant on whether defendant should testify or whether counsel should present other evidence.

¶ 58　　We find it unnecessary to consider this constitutional question, given our holding that the trial court's deferred decision does not warrant reversal under the plain error rule. Courts must avoid constitutional questions where the case can be decided on nonconstitutional grounds. *In re E.H.*, 224 Ill. 2d 172, 180 (2006). Here, we have found error but ultimately concluded the error did not warrant reversal as plain error. Defendant's constitutional argument is premised on the same underlying error. Like the argument based on section 115-4(k), defendant's constitutional argument is forfeited and subject to the same plain error analysis. And, because the evidence is neither close nor does the error rise to the level of second prong plain error, the result will be the same: we honor defendant's

procedural default and affirm his conviction and sentence. Accordingly, we do not reach the constitutional arguments raised by defendant in this appeal.

¶ 59                                                        CONCLUSION

¶ 60        For the foregoing reasons, we hold that section 115-4(k) of the Code requires the trial court to decide a midtrial motion for a directed verdict prior to advancing to the defense's case. Therefore, the trial court erred when it failed to timely decide defendant's midtrial motion for a directed verdict. However, we conclude that the error does not warrant reversal under the plain error rule given that the evidence is not closely balanced and defendant failed to meet his burden of persuasion in establishing second prong plain error. The judgments of the appellate court and the circuit court are affirmed.

¶ 61        Judgments affirmed.

¶ 62        JUSTICE CUNNINGHAM, specially concurring:

¶ 63        The majority holds that the trial court erred when it deferred ruling on the defendant's motion for a directed verdict that was presented at the close of the State's evidence. According to the majority, under section 115-4(k) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4(k) (West 2020)), a trial court *must* rule on a defendant's motion for a directed verdict when it is presented midtrial and may not, under any circumstances, defer ruling on the motion until the close of all the evidence. The majority then holds, however, that the trial court's error in this case does not amount to plain error and, on that basis, affirms the defendant's convictions.

¶ 64        I strongly disagree with the majority's holding that section 115-4(k) of the Code *requires* a trial court to rule on a motion for a directed verdict when it is presented midtrial. Nothing in the language of the statute supports that conclusion. Thus, the trial court did not err when it deferred ruling on the defendant's motion, and there is no need to reach the question of plain error. I therefore concur only in the judgment of the majority affirming the defendant's convictions.

¶ 65 Section 115-4(k) of the Code states:

"When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." *Id.*

¶ 66 The defendant argues that, under this provision, a trial court has *no* discretion to defer ruling on a motion for a directed verdict that is presented midtrial. Instead, according to the defendant, the motion *must* be ruled on by the court at the time it is presented. The defendant contends this is necessary because he must be able to make a "fully informed" decision as to whether to testify or remain silent, and he can only make that "fully informed" decision with the benefit of the trial court's ruling on the sufficiency of the evidence. The defendant maintains that

"[a]ny other reading [of section 115-4(k)] would allow a court to require a defendant to waive his fundamental right to testify or to remain silent, and to require defense counsel to decide whether to present evidence, while depriving them of information they need to make informed and intelligent decisions. *** That is, construing the statute any other way would produce an unjust result the legislature could not have intended."

Because the trial court in this case deferred ruling on his motion, the defendant argues that the court violated section 115-4(k) and, further, that this violation amounted to plain error.

¶ 67 Although the majority rejects the defendant's plain error argument and therefore affirms the defendant's convictions, it agrees with the defendant that the trial court violated section 115-4(k). Adopting the defendant's reasoning, the majority holds that, because section 115-4(k) "implicates" a defendant's right to testify or remain silent (*supra* ¶ 45), the statute must be read as *requiring* the trial court to rule on the midtrial motion at the time it is presented and that a trial court may not, *under any circumstances*, defer ruling on the motion until the close of all the evidence (*supra* ¶ 49). I strongly disagree.

¶ 68 According to the majority, the legislature has determined that a defendant cannot make an informed decision as to whether to testify or remain silent unless the trial court first rules on a motion for directed verdict that has been presented midtrial and, further, that the legislature enacted section 115-4(k) specifically to address this concern. However, there is nothing in the language of the statute to suggest that this is true. Surely, if the legislature believed that a trial judge's ruling on a motion for directed verdict was *necessary* to obtain a valid waiver of a defendant's right to testify, it would have said so. But the statute is completely silent on this point.

¶ 69 Of course, the reason section 115-4(k) says nothing about ensuring a valid waiver of the right to testify is because that is not why the statute was enacted. As the majority itself recognizes, the purpose of section 115-4(k) is to protect a defendant's right not to be convicted based on insufficient evidence. *Supra* ¶ 44 (citing *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979)). The majority correctly explains, "[b]y enacting section 115-4(k), our legislature created a state law avenue meant to ensure this protection by allowing for a motion for a directed verdict as a means of testing the constitutional sufficiency of the evidence." *Supra* ¶ 44.

¶ 70 Section 115-4(k) requires the trial court to enter a judgment of acquittal when it determines the evidence is insufficient to support a guilty verdict. The statute does not specify *when* during a trial the court must enter a judgment of acquittal because the statute does not need to do so. As the State correctly notes, the statute's purpose of ensuring that a defendant is not convicted based on insufficient evidence is achieved regardless of when the court enters the judgment of acquittal—a defendant is equally acquitted whether the judgment of acquittal is entered immediately after the close of the State's evidence, after the close of all the evidence, or after the jury has returned its verdict.

¶ 71 When a trial court defers ruling on a motion for a directed verdict after the State has presented its case, the question for the defendant is whether, given his assessment of the State's evidence and its effect on the jury, he believes that testifying would improve the likelihood of an acquittal. There is *nothing* in the language of section 115-4(k) to support the majority's holding that the legislature has concluded that a defendant, assisted by counsel, can make this decision *only* if the trial court first denies his motion for a directed verdict.

¶ 72    Moreover, there is no basis for concluding that a trial is rendered fundamentally unfair if a defendant must decide whether to testify before the trial court has ruled on the motion for directed verdict. Indeed, the facts of this case illustrate that point and it is useful to highlight exactly what occurred. After the defendant presented his motion for directed verdict, the trial court stated that it was taking the motion under advisement. The following colloquy then occurred:

> "MR. WELTE [(DEFENSE COUNSEL)]: Your Honor, I would like to make a record.
>
> THE COURT: Sure.
>
> MR. WELTE: Mr. Johnson, you are aware that it is absolutely your right to testify should you choose to?
>
> THE DEFENDANT: Yes.
>
> MR. WELTE: And Mr. Khoury and myself spoke with you in chambers about this issue?
>
> THE DEFENDANT: Yes.
>
> MR. KHOURY [(DEFENSE COUNSEL)]: And you are knowingly and voluntarily waiving your right to testify at this trial?
>
> THE DEFENDANT: Yes.
>
> MR. WELTE: And you are doing so of your free will?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions about that, Mr. Johnson?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: And you understand if you didn't—if you don't testify, the State's—or the jury is going to be instructed that they can't consider that in any way in deciding whether or not the State's carried its burden of proof?
>
> THE DEFENDANT: Yes.

THE COURT: Okay. Anybody promise you anything or threatened you with anything to get you to make this decision?

THE DEFENDANT: No, sir.

THE COURT: Okay. I'll find that he's knowingly and voluntarily made the decision not to testify."

As the foregoing shows, there was no fundamental unfairness in this case, where the defendant was fully admonished and made a knowing and valid waiver of his right to testify. If the majority's interpretation of section 115-4(k) were correct, it would mean that the legislature has concluded that a defendant who has been fully and properly admonished cannot make a valid waiver if he does not have the benefit of the trial judge's ruling on the motion for directed verdict. I see no basis for thinking that was the legislature's intent.

¶ 73    The majority expressly and repeatedly acknowledges that section 115-4(k) is *silent* as to when the ruling on the motion for a directed verdict must be made. *Supra* ¶¶ 37, 44. Yet the majority then inexplicably concludes that the statute requires the trial court to rule on the motion when it is presented. *Supra* ¶¶ 45, 49, 58. There is no justification for this contradictory conclusion. The trial court in this case did not violate section 115-4(k) when it deferred ruling on the defendant's motion for a directed verdict before he made a knowing and valid waiver of his right to testify. Accordingly, I concur only in the judgment of the majority.

¶ 74    JUSTICES THEIS and ROCHFORD join in this special concurrence.